UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| SAMANTHA L. BURLESON,<br><br>     Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>     Defendant. | Case No. 1:24-CV-9 JD |

## **OPINION AND ORDER**

Plaintiff Samantha Burleson appeals the denial of her claims for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act. For the reasons below, the Court will remand this case to the Agency for additional consideration.

### A. Background

Ms. Burleson applied to the Social Security Administration for disability benefits, alleging that she became disabled in October 2020. She was then 44 years old. Ms. Burleson claimed disability based on degenerative disc disease, back surgery, knee pain, and fibromyalgia. Ms. Burleson's claims were rejected, leading to a review by an Administrative Law Judge ("ALJ").

In the proceedings before the ALJ, Ms. Burleson maintained that she has experienced chronic pain since 2016, mainly in her knees, lower back, and feet. Over the years, she received various treatments, including steroid injections, physical therapy, and medications, but her pain persisted. Beginning in 2019, she began suffering from situational depression after the loss of her

mother in a home fire. In 2020, she was diagnosed with osteoarthritis, lumbar radiculopathy, and fibromyalgia. Imaging revealed severe issues with her spine, including herniations and stenosis. After conservative treatments failed, she underwent back surgery in December 2020, which improved her condition but didn't resolve her pain. At the hearing, Ms. Burleson testified that despite back surgery, her pain persists, and she struggles with tasks like walking, standing, and holding objects. She maintained that she struggles with depression, exacerbated by her physical limitations, and manages it with medication. Ms. Burleson stated that her average day consists of sitting with her feet propped up.

The ALJ issued a decision finding that Ms. Burleson was not disabled. (R. at 27.) In doing so, the ALJ employed the customary five-step analysis. At Step 2, the ALJ determined that Ms. Burleson suffered from the following severe impairments: "osteoarthritis of the bilateral knees; degenerative disc disease of the lumbar spine, with radiculopathy; lumbar spinal stenosis and spondylolisthesis; diabetes mellitus; fibromyalgia; and obesity." (R. at 20.) The ALJ ruled out several other conditions as not being severe. Among those was situational depression:

> The claimant has no substantive treatment history for her diagnosed situational depression. Her records note the onset of depression in 2019 after the loss of her mother, but the only indication of any recurrence or exacerbation of the claimant's depression symptoms is summarized in a November 2022 appointment record where the claimant indicated that the holidays triggered memories, and associated depression symptoms. The claimant requested that she restart an antidepressant which was helpful to her in 2019. The undersigned notes the claimant's mental status examinations have been mild throughout the record. The noted depression symptoms are indicated to have caused the claimant no more than mild limitations in any area of her mental health functioning.
>
> Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, it is nonsevere (20 CFR 404.1520a(d)(1) and 416.920a(d)(1)).

(R. at 21 (citations to the record omitted).)

At Step 4, the ALJ determined Ms. Burleson's residual functional capacity ("RFC"),[1] finding that she can

> perform sedentary work as defined in 20 CFR 404.1567(a)[2] and 416.967(a) except that she must be allowed to alternate between sitting and standing, standing for 15 minutes every 60 minutes, while remaining at her work station, and not being off task more than 10% of the workday; she can never climb ladders, ropes, or scaffolds, never crawl; occasionally climb ramps or stairs, balance as defined in the SCO of the DOT, stoop, kneel, and crouch; frequently finger and feel with her bilateral upper extremities; and she must avoid concentrated exposure to workplace hazards.

(R. at 22.)

In light of this RFC, the ALJ determined that Ms. Burleson is unable to perform any past relevant work. (R. at 26.) At the final step, the ALJ found that, considering Ms. Burleson's age, education, work experience, and the RFC, there are jobs in significant numbers in the national economy that she can perform (a document preparer, call out operator, hand mounter). (R. at 27.) The ALJ arrived at this conclusion after questioning a Vocational Expert at the hearing.

After the Appeals Council denied Ms. Burleson's request for review of the ALJ's decision, she appealed to this Court.

**B.    Standard of Review**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707

---

[1] "The RFC reflects 'the most [a person] can still do despite [the] limitations' caused by medically determinable impairments and is assessed 'based on all the relevant evidence in [the] case record.'" *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *2 (7th Cir. Dec. 21, 2021) (quoting 20 C.F.R. §§ 404.1545, 416.945(a)).

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567.

(7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

**C.   Standard for Disability**

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform past relevant work; and

5. Whether the claimant can perform other work in the national economy.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20

C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

### D.  Discussion

In her appeal, Ms. Burleson raises three contentions: First, she argues that the ALJ did not build a logical bridge from the evidence to the finding in the RFC that Ms. Burleson can "alternate between sitting and standing, standing for 15 minutes every 60 minutes while remaining at her workstation, and not being off task more than 10% of the workday." Second, Ms. Burleson maintains that the ALJ ignored her subjective complaints and relied only on select objective evidence. And lastly, she argues that the ALJ's RFC determination failed to account for her depression. The Court will address this last argument, since it merits a remand.

"When determining the RFC, the ALJ must consider all medically determinable impairments, physical and mental, even those that are not considered 'severe.'" *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008); *see also* 20 C.F.R. § 404.1545 ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . ."). "The ALJ cannot merely conclude from non-severity that no limitations are necessary." *Jeremy L. J. v. Saul*, 2020 WL 1033795, at *5 (S.D. Ind. Feb. 14, 2020) (referencing *Bowen v. Yuckert*, 482 U.S. 137, 150–51 (1987)). "If an ALJ believes that certain impairments are not severe, 'that would only justify discounting their severity, not ignoring them altogether.'" *McGarvey v. Kijakazi*, No. 21 C 6664, 2022 U.S. Dist.

LEXIS 227684, at *10 (N.D. Ill. Dec. 19, 2022) (quoting *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)). "ALJs [must] provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1054 (7th Cir. 2024) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)).

Here, under Step 2 of the sequential analysis, the ALJ found that Ms. Burleson's situational depression was a nonsevere impairment. (R. at 21.) The ALJ noted that, while the records document the onset of depression in 2019, the only mention of a recurrence or worsening of symptoms appears in a November 2022 clinic note, where Ms. Burleson reported that the holidays triggered memories and related feelings of depression. (R. at 21 (citing R. at 455).) During that appointment, Ms. Burleson requested antidepressants, which she had also used in 2019. According to the ALJ, the record of exams shows that Ms. Burleson's mental health has been only mildly impaired. (R. at 21.) The ALJ thus concluded that she has mild limitations in all four functional areas under the "paragraph B" criteria and is therefore "nonsevere." In the same section, the ALJ stated generally that she "considered all of [Ms. Burleson's] medically determinable impairments, including those that are not severe, when assessing [her] residual functional capacity." (R. at 20.) She also acknowledged that the "mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment" than that considered under "paragraph B." (R. at 20.) But there's no mention of depression in the RFC discussion, let alone how it affects Ms. Burleson, if at all, alongside her other impairments, or whether her RFC was adjusted to account for depression. Under the circumstances, such an omission constitutes an error requiring a remand.

7

To be sure, at Step 4, the Court does not expect the ALJ to mechanically recite the findings at Step 2. However, consistent with the Agency's own regulations, and the ALJ's own acknowledgement, "the ALJ needed to discuss specifically how each of [Ms. Burleson's] limitations was considered, accounted for, and/or accommodated in determining [her] RFC. Even a functional limitation in [Ms. Burleson's] ability to work is still a limitation that requires discussion." *McGarvey v. Kijakazi*, No. 21 C 6664, 2022 U.S. Dist. LEXIS 227684, at *11 (N.D. Ill. Dec. 19, 2022). Without more, the ALJ's formulaic statement that she "considered all of [Ms. Burleson's] medically determinable impairments, including those that are not severe, when assessing [her] residual functional capacity" provides no insight into how the impairments were considered, so a meaningful review is impossible. *See Miller v. Comm'r of Soc. Sec.*, No. 1:15-cv-00343-SLC, 2017 U.S. Dist. LEXIS 60731, at *21 (N.D. Ind. Apr. 21, 2017) ("Here, after finding at step two that Miller's mental impairments were not severe, there is no evidence that the ALJ later considered Miller's mental impairments when analyzing the RFC, other than to say that his mental impairments have been discussed above. This is error, as '[a]fter a "not severe" finding at step two, the special technique requires the ALJ to assess the mental impairment in conjunction with the individual's RFC at step four.'") (quoting *Pepper v. Colvin*, 712 F.3d 351, 366 (7th Cir. 2013)) (cleaned up).

Nothing is said about the depression after Step 2, yet its consideration could impact Ms. Burleson's RFC. At the hearing, Ms. Burleson testified that she takes antidepressants. The ALJ asked her if they help, and she answered "yes and no." (R. at 52.) She added that she's depressed because "[t]here's so much that I want to do that I can't do" and the medication stops her from crying when she feels like crying. (*Id.*) She later testified that depression affects her ability to shower regularly:

> Q. Do you have any issues with your self care in terms of, you know, your hair, bathing, dressing, those types of things?
>
> A. No. The main thing is the depression to where it's like, I know I need to take a shower but I just, I don't want to. And taking a shower really wears me out. It is exhausting, taking a shower.

(R. at 57.)

Finally, the clinic notes from October 2020 correlate her depression with her experiencing pain, not only the loss of her mother. (R. at 405 (Ms. Burleson "reported increased depression over the past few weeks due to her chronic pain issues").)

Without any indication from the ALJ as to how depression was considered in determining the RFC, the Court cannot be assured that this impairment was taken into account. *See Walker v. Saul*, No. 3:19-CV-1072-HAB, 2021 U.S. Dist. LEXIS 4722, at *7 (N.D. Ind. Jan. 11, 2021) ("After step two, there is no reference to Plaintiff's mental disorder at all. Despite the uncontested evidence and her own findings, the ALJ included no limitation in the RFC to account for the panic disorder nor any explanation as to why the RFC omitted any reference to the panic disorder. Accordingly, the Court cannot assure itself that the ALJ took this medically determinable limitation into account in formulating the RFC. The ALJ, then, failed to build the necessary logical bridge, and remand is necessary."); *see also Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) ("Contrary to SSR 96–8p, however, the ALJ did not explain how he arrived at these conclusions; this omission in itself is sufficient to warrant reversal of the ALJ's decision.") (citing SSR 96–8p at *7 ("RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts.").) In other words, the Court cannot tell whether the ALJ adequately accounted for all of Ms. Burleson's limitations in reaching her conclusion, and therefore cannot determine whether her reliance on the vocational expert's testimony was sound. *See Adams v. Colvin*, No. 13 C 4825, 2016 U.S.

9

Dist. LEXIS 9067, at *33 (N.D. Ill. Jan. 26, 2016). Accordingly, a remand is required. *Cf. Koswenda v. Astrue*, No. 08 C 4732, 2009 U.S. Dist. LEXIS 28306, at *15 (N.D. Ill. Apr. 2, 2009) ("Although the ALJ cited evidence showing that Plaintiff's impairment in this area was not severe, she nonetheless found that Plaintiff had 'mild limitations in his ability to maintain concentration, persistence or pace.' This limitation, even though mild, should have been included in questions to the VE. Thus, the case will be remanded . . . ."). On remand, the ALJ should explain what impact, if any, that Ms. Burleson's depression has on the RFC.

As noted above, Ms. Burleson also claims that the ALJ erroneously assessed her ability to alternate between sitting and standing and not being off task more than 10% of the workday; as well as ignoring her subjective complaints in favor of objective evidence only. Since the Court is remanding this case to the Agency to determine whether depression is accounted for in the RFC, the Court need not address Ms. Burleson's other arguments. The Court trusts that these matters will receive consideration as part of the new RFC assessment.

### E. Conclusion

For these reasons, the Court REVERSES the Agency's decision and REMANDS this matter to the Agency for further proceedings consistent with this opinion. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: January 24, 2025

/s/ JON E. DEGUILIO
Judge
United States District Court